In State v. Kennade, 121 Mo. 405, 413, 26 S. W. 347, 349, the court said:

"The occurrences in the saloon just a few minutes before the homicide, as related by Bass, elucidating as they did the subsequent * *, * transactions and giving to them their proper complexion and expression, constituted part of the res gestae, and were therefore competent evidence."

In Territory v. Price, 14 N. M. 262, 269, 91 Pac. 733, the court, in effect, held that all the circumstances leading up to and preceding the homicide elucidated the criminal transaction which subsequently occurred and were admissible therefor.

[3] In conclusion we add that we are of the opinion that the trial court should have permitted appellant to prove by the several witnesses offered by him all that occurred in the conversation and meeting of the parties just prior to the act of homicide. The doctrine of harmless error in criminal cases is a dangerous one, and will not be applied in this case, for we are wholly unable to state as a fact that this evidence would have had no material bearing on the conclusion reached by the jury. The appellant was entitled to show the previous transaction which illuminated the subsequent homicidal act, and the refusal of the court to permit him to show such facts by witnesses other than himself constitutes reversible error, for which reason this case will be reversed and remanded for a new trial; and it is so ordered.

HANNA, J., concurs.

PARKER, J. I concur in the result, but disapprove of the instruction which is sustained by the court.

---

[No. 1913, September 22, 1916.]
[On Motion for Rehearing, December 30, 1916.]
STATE ex rel. CUNNINGHAM et al. v. ROMERO, County Treasurer.

SYLLABUS BY THE COURT.

1. Chapter 78, Laws 1915, construed, and **held**, that the owner of property may redeem the same from a tax sale

within three years from the date of the certificate by paying the amount paid at such sale, with interest at the rate of 1 per cent. per month, together with any taxes which may have been paid upon the property by the purchaser of the tax certificate, with interest at the same rate.          P. 329

### On Motion for Rehearing.

2.   The provision of section 1, chapter 78, Laws 1915, which reads as follows, "Such sale of said certificates or duplicate certificates, or such redemption by the owner, shall release said property from the lien of all delinquent taxes, penalties, interest, and costs standing against the same at the date of such sale or redemption," operates to release the property from the lien of all such taxes, penalties, interest, and costs upon the sale of the certificate.

P. 335

Appeal from District Court, San Miguel County; Leahy, Judge.

Action by the State, on the relation of J. M. Cunningham and another, administrators of the estate of F. H. Pierce, for mandamus to Eugenio Romero, treasurer and ex-officio collector of taxes of San Miguel County. From a judgment for relators, defendant appeals. Affirmed.

CHAS. W. G. WARD and C. A. HUNKER, both of Las Vegas, and THOMAS H. GIBSON and EDWIN PARK, both of Denver, Colo., for appellant.

CHARLES A. SPIESS and HERBERT W. CLARK, both of East Las Vegas, for appellees.

### STATEMENT OF FACTS.

This is an action for mandamus against the county treasurer of San Miguel county to compel him to receive a certain sum of money tendered and claimed by relators to be sufficient to redeem certain lands from a tax sale previously made for delinquent taxes, and to issue a certificate of redemption therefor.

The petition shows that the properties involved were sold October 8, 1913, pursuant to law, to the county of San Miguel for delinquent taxes for the years 1912 and 1913, penalties, interest, and costs aggregating the sum of $654.13. The petition further shows that on July 7, 1915, at a regular session of the board of county commissioners of said county of San Miguel, and pursuant to the provisions of chapter 78, Laws 1915, the board adopted a resolution authorizing the county treasurer to sell all tracts, lots, and parcels of land—

"which have been bid in by the county * * * for two or more years to the higest bidder for cash, the minimum amount to be accepted in cash by the said treasurer to be the actual amount of taxes due for all years for which taxes appear upon the tax rolls to be delinquent, including the year 1913, less all costs, penalties and interest."

The petition further recites that on September 20, 1915, two certificates of tax sale, being the ones here involved, were recorded in the office of the county clerk of San Miguel county, and on September 22, 1915, the respondent, the county treasurer of San Miguel county, assigned and conveyed to the Glen Investment Company the said certificates of tax sale in consideration of the payment by said company of the sum of $585.06 therefor, which sum was the minimum amount under the conditions of the resolution of the board of county commissioners heretofore referred to.

It further appears from the petition that the said Glen Investment Company, on October 1, 1915, paid the sum of $144.03 delinquent taxes for the year 1911, on the property described in the said certificates. On January 10, 1916, the relators, on behalf of the estate of F. H. Pierce, deceased, and for and on behalf of the heirs of said F. H. Pierce, deceased, tendered to Eugenio Romero the sum of $148.83, for taxes for the year 1911, on said property, including interest thereon, and the sum of $267.97, for the use of Glen Investment Company or its assigns, to redeem the property described in said certificates from the sale for the year 1912, being the amount of the purchase money which was paid for the tax sale

certificate No. 608, which was one of the certificates acquired by said Glen Investment Company by purchase from the county treasurer on September 22, 1915; the amount thus tendered being the amount paid by the purchaser, the Glen Investment Company, with interest at 1 per cent. per month from the date of purchase to the date of the tender. And at the same time and place the relators also tendered on behalf of the estate and heirs of F. H. Pierce, deceased, the sum of $338.75, for the use of the Glen Investment Company, to redeem the property from the sale for the year 1913; the amount of this tender being the amount for which the second certificate was sold by the county treasurer on September 22, 1915, with interest thereon at the rate of 1 per cent. per month from the date of sale to the date of the tender.

By the petition it further appears that the respective tenders referred to were refused by the county treasurer, who also refused to give to relators a certificate of redemption from the tax sales, wherefore relators tendered into the court the sum of $755.55 for a certificate of redemption from the sales in question, and for the payment of the taxes for the year 1911.

A demurrer to the petition for the writ was interposed upon the ground that the petition did not state facts sufficient to constitute a cause of action in that it showed upon its face that no proper and legal tender was made to the respondent, the county treasurer, which demurrer was overruled; and, the respondent declining to plead further, it was ordered and adjudged that the alternaive writ be made mandatory, from which judgment of the trial court this appeal is prayed.

## OPINION OF THE COURT.

HANNA, J. (after stating the facts as above.) The only question for our determination is whether an owner of real estate which has been sold to the county for delinquent taxes for two or more years prior to April 1, 1915, may redeem the same by the payment of the amount for which the certificate of sale has been sold and assigned by the county to a third party, or whether such owner

State, Cunningham v. Romero, 22 N. M. 325.

must pay the original amount for which the property was sold to the county.

[1] It is the contention of appellant that the Glen Investment Company, the purchaser of the tax certificates in question, is entitled to receive not only the amount paid for the certificates, but also the penalties, interest, and costs which had accrued thereon, although such penalties, interest, and costs had not, in fact, been paid to the county by the purchaser of the certificates. The question is purely one of construction of our statutes, and there is no controversy over the fact that the sale of the property described in the certificates for delinquent taxes was made pursuant to the provisions of section 5498 of the Codification of 1915, which section provides:

"Each parcel of real estate offered for sale shall be struck off to the highest bidder for cash, but if such real estate cannot to be sold for the full amount of the taxes, penalty and interest due thereon or if there should be no bidder for the same, the whole amount of the property on which the taxes have been levied shall be struck off to the county for such total amount, and the collector shall make an entry on the assessment book of the fact, opposite to the name of the person assessed, and shall be credited with the amount of tax thereon in his usual settlement. In no case shall such interest be released, abated, rebated or reduced, but it shall have all the force and effect of the original tax and become part thereof, and any failure on the part of the county treasurer to add such interest to the tax at the time of collection thereof shall subject him to a penalty of double the amount thereof for which he and his bondsmen shall be liable, to be·recovered by suit brought in the name of the state. One· half of the interest ·or penalty collected upon taxes shall be paid to the state treasurer for the credit of the state interest fund, and the other half shall be credited to the county interest fund: Provided, the county shall not by the sale aforesaid acquire title to such real estate, but shall sell and assign the duplicate tax certificate, as provided in section 5500."

By section 5500 it is provided that:

"When any property shall be struck off to the county as provided in section 5498, it shall be the duty of the county treasurer to sell and assign the duplicate certificate of such sale to any person who will at any time pay the full face value thereof, with accrued interest, and if the same cannot be sold at private sale before the regular sale of property for delin-

quent taxes in the next succeeding year, such certificate shall be sold at public auction at the time of such delinquent tax sale to the highest bidder for cash by the county treasurer then in office, but in no case shall such certificate of sale be sold for less than the full amount of the taxes and interest due after notice stating the time and place of sale, a brief description of the property, the amount due and the name of the person against whom the tax was assessed, or that it was assessed against unknown owners, if such be the case, shall have been published for four consecutive weeks, as provided in section 5495.

"It shall be the duty of the treasurer, immediately after the sale of any such duplicate tax sale certificate, if the postoffice address of the owner or agent of the owner is known, to mail a notice to such owner or agent informing him of the sale of such duplicate certificate of taxes upon his property, and giving the name of the purchaser and the amount paid therefor, and the surplus, if any, over and above the taxes, penalty and accrued interest, and that unless he shall redeem the same within three years from the date of recording of said duplicate certificate, which with the assignment thereof by the treasurer, must be recorded in the office of the county clerk, a deed therefor will be executed and delivered to the purchaser or his assigns. The owner of any such real estate may, at any time prior to the sale of such duplicate certificate, redeem the same by paying to the treasurer the amount of such taxes, penalty, interest and costs."

It is to be noted from the foregoing section that it was made the duty of the treasurer after the sale of any such duplicate tax certificates to mail a notice to the owner or agent of the property, informing him of the sale of such certificate, and giving him the name of the purchaser and the amount paid therefor, and advising him that unless he shall redeem within three years from the date of recording of said duplicate certificate, a deed will be executed and delivered to the purchaser or his assigns. By section 5502, Code 1915, subsequently repealed, it was further provided that the treasurer should give the purchaser a certificate of sale containing a description of the property sold, stating the name of person or persons to whom the same was assessed, and the amount paid therefor, and that the property was sold for taxes subject to the right of the owner to redeem the property within three years by paying the amount paid at such sale, with interest thereon at the rate of 1 per cent. per month.

This latter section of the Codification of 1915 was amended by chapter 78 of the Laws of 1915; the amending act being an entire substitution for said section 5502, and reads as follows:

"Upon payment of the amount for which any real estate is sold, the collector shall give to the purchaser a certificate o sale, containing a description of the property sold, stating the name of the person or persons to whom the same was assessed or that it was assessed to unknown owners, as the case may be, the amount paid therefor, and that it was sold for taxes, with the date of sale, and that the sale is subject to the right of the owner to redeem the property within three years by paying the amount paid at such sale with interest thereon at the rate of one per cent. per month, which certificate must be recorded in the office of the county clerk in a book kept for the purpose of recording such certificates. Such former owner may at any time, within three years from the date of such certificate, provided for in section 36 hereof, redeem the property by paying to the county treasurer for the use of the purchaser, or his assigns, the amount of the puchase money with interest thereon at the rate of one per cent. per month, together with any taxes which may have been paid upon the property by the purchaser or his assigns, with interest at the same rate, and such former owner may retain possession of the property until the time of redemption has expired. In all cases where any property shall have been bid in by any county subsequent to March 16th, 1905, and prior to March 18th, 1913, in accordance with chapter 22 of the Laws of 1899, and the duplicate certificate of such sale shall not have been sold by the county treasurer in conformity with the provisions of chapter 134 of the Laws of 1905, or some amendment thereof, the person or persons, their heirs, executors or assigns, who owned said property at the time the same was bid in by such county are hereby declared to have the right of paying the amount of taxes for which said county bid in said property unto the county treasurer of said county at any time prior to January 1st, 1916, and it shall be the duty of said county treasurer upon receipt of the amount of such taxes to issue unto such person or persons, their heirs, executors or assigns, as the case may be, a certificate of redemption of said property, which certificate shall be conclusive proof of such redemption in any case hereafter commenced. Real estate sold for taxes, whether struck off to the county or to others, shall continue to be assessed in the name of the original owner, or to unknown owners, as the case may be, until the redemption period shall have expired, and taxes thereon for the time during which said certificate or duplicate certificate shall be held by the county or a purchaser shall be a lien upon said property until paid. Any final judgment for the sale of real estate for delinquent taxes, rendered according to law, shall

estop all parties from raising any objection thereto which existed at or before the rendition of such judgment and ( have been presented as a defense in such action in the court wherein the same was rendered, and as to all such questions the judgment shall be conclusive evidence of its regularity and validity in all subsequent proceedings, whether collateral or direct, and no bill of review or other action attacking the said judgment shall be entertained by any court except in cases where the taxes had been paid or the real estate was not liable for tax or assessment.

"Whenever any lot, parcel or tract of land, or any interest therein, or any improvement thereon, shall have been bid in prior to April first, 1915, by or for any county at tax sales made pursuant to law for two or more years, and the treasurer of such county has been unable to sell the certificates or duplicate certificates therefor so as to realize the total amount of the taxes, interest, penalty and costs due upon such property, said treasurer may sell the same at public auction to the highest bidder for cash, who shall bid not less than the minimum sum therefor which the county commissioners of said county, by order duly entered upon their records at any regular meeting, may have decided to accept. And at any time prior to the date fixed for such sale in the notice given by the treasurer the owner of such property may redeem the same from such tax sales by paying to the treasurer the minimum amount so fixed by the county commissioners, such sale of said certificates or duplicate certificates, or such redemption by the owner, shall release said property from the lien of all delinquent taxes, penalties, interest and costs standing against the same at the date of such sale or redemption."

By the second paragraph of the amendatory act of 1915, it is quite clear that at any time prior to the date fixed for the sale by the treasurer of the tax certificate, the owner of the property may redeem the same from tax sale by paying to the treasurer the minimum amount fixed by the county commissioners, but the question is whether or not he can tender this minimum amount after the treasurer has sold the certificates and assigned the same to a third party for the minimum amount fixed by the board of county commissioners. It is clear that no attempt to redeem was made prior to the sale of the certificates.

Appellant makes an able argument to the effect that a county necessarily becomes the purchaser of the property under the provisions of section 5498, paying therefor the total amount of the taxes, interest, penalties, and costs

State, Cunningham v. Romero, 22 N. M. 325.

against the property, and that, therefore, this amount is
the amount which must be paid in order to redeem the
property from the tax sale, even though the certificate
has been assigned to a third person, and that any other
construction would defeat the statute. In other words, the
argument is that unless the county is a purchaser, and the
taxes, interest, penalties, and costs the purchase money,
there never has been and there never can be a sale for
delinquent taxes to counties under the law, and that the
plain purpose of the statute would be defeated by taking
from counties the remedy given by the statute for the
enforcement of delinquent taxes upon real estate; and,
further, that certificates of tax sales could never be is-
sued to the county under the statute for the lack of any
method whereby to pay the amount for which real estate
is sold for delinquent taxes. It is therefore forcibly ar-
gued that the only right of redemption that the relators
can claim under the facts alleged in their petition is to
be found in section 5502, as amended, which is by pay-
ing to the county treasurer for the use of the purchaser,
or his assigns, the amount of the purchase money (paid
by the county), with interest thereon at the rate of 1
per cent. per month, together with any taxes which may
have been paid upon the property, together with interest
at the same rate.

The fallacy of this argument, however, lies in the fact
that the purchaser referred to in the act of 1915 is the
purchaser of the tax certificate, who is authorized to ac-
quire the certificate at a minimum amount to be fixed
by the county commissioners under the terms of the act.
It is our conclusion that the terms "purchaser and amount
paid therefor" refer to the sale of the certificate by the
county. The act does not provide that the taxes, with in-
terest, costs, and penalties, shall be the amount specified
in the certificate to be issued by the county treasurer, but
does provide that the amount paid for the certificate shall
be set out in the tax certificate, which, taken together
with the other provisions of the act as to the sale of the
property for taxes and the right of the owner to redeem
within three years, would clearly indicate that the owner

is only required to tender the amount paid by the purchaser of the certificate, together with the interest of 1 per cent. per month as provided by the act in question. We therefore conclude that the owner of property may redeem the same from a tax sale within three years from the date of the certificate by paying the amount paid at such sale, with interest at the rate of 1 per cent. per month, together with any taxes which may have been paid upon the property by the purchaser of the tax certificate, with interest at the same rate.

All doubt as to the correctness of our conclusion is disposed of by an examination of the concluding sentence of the second paragraph of chapter 78 of the Laws of 1915, which reads as follows:

"And at any time prior to the date fixed for such sale in the notice given by the treasurer the owner of such property may redeem the same from such tax sales by paying to the treasurer the minimum amount so fixed by the county commissioners, such sale of said certificates or duplicate certificates, or such redemption by the owner, shall release said property from the lien of all delinquent taxes, penalties, interest and costs standing against the same at the date of such sale or redemption."

From the foregoing quotation it is quite apparent that the Legislature intended not only that the owner might redeem from a tax sale upon the payment of the minimum amount so fixed by the board of county commissioners prior to the date fixed for a sale in the notice given by the treasurer, but also that the sale of the certificates or duplicate certificates, as well as the redemption by the owner, should release the property from the lien of all delinquent taxes, penalties, interest, and costs standing against the same at the date of such sale or redemption. Not only was the sale of the tax certificate for a minimum amount to be fixed by the board of county commissioners clearly contemplater, but it was evidently intended that the penalties, interest, and costs should no longer constitute a lien against the property, and that this was true in the case of redemption by the owner before a sale of the tax certificate by the treasurer, and was

also true, even though the tax certificate was sold before redemption for the minimum amount, in which later event the penalties, interest, and costs should cease to be a lien.

Finding no error in the record, the judgment of the district court is affirmed; and it is so ordered.

ROBERTS, C.J., and PARKER, J., concur.

## ON MOTION FOR REHEARING.

HANNA, J.—Appellant has filed a motion for rehearing, in which he sets forth several reasons for his contention that the former opinion in this case is erroneous.

[2] First, he argues that the construction placed by this court upon the closing words of section 1, chapter 78, Laws 1915, which read as follows, "Such sale of said cer-. tificates or duplicate certificates, or such redemption by the owner, shall release said property from the lien of all delinquent taxes, penalties, interest and costs standing against the same at the date of such sale or redemption," operates to release the property from the lien of all such taxes, penalties, interest, and costs upon the sale of the certificate, and the purchaser of the same simply holds a piece of paper without security of any kind or character. That the statute does operate to release the property from the lien of the delinquent taxes, penalties, interest, and costs cannot be doubted from the language used; but appellant is mistaken in his further contention that the purchaser of the certificate has no security whatever, for under the statute he is entitled to retain the certificate until the property is redeemed by payment by the owner to the treasurer of the amount paid by the purchaser for the certificate, plus the interest authorized by the statute, and if such owner does not redeem within three years the holder of the certificate is entitled to a deed for the property. The reason for the provision releasing the property from the lien of delinquent taxes, etc., upon the sale of the certificate is apparent. The board of county commissioners is authorized to fix a minimum price at which the certificate may be sold at public auction, which may be, and presumably is, less than the amount of taxes, penalties, interest, and costs. If the sale of the certifi-

cate under such circumstances did not operate to release the property from the lien of the delinquent taxes, penalties, interest and costs, or if such property is redeemed by the owner on payment of the price so fixed, the delinquent taxes, etc., or the difference at least between the minimum price so fixed and the amount of such delinquent taxes, etc., appearing upon the books of the treasurer, would continue as a lien upon the property which the county could enforce and the purchaser of the certificate would be required to eventually pay this amount, even though he might have purchased the certificate for much less. Hence we are satisfied that the construction placed upon this clause in the former opinion is correct.

In his motion for rehearing appellant further contends, first, that a sale to the county constitutes a sale for taxes, the same as though it were to a private individual; second, that the county becomes invested with the same title that is acquired by the individual; and, third, that a certificate issued to a county constitutes a contract or obligation which, in the hands of the county, cannot be violated by any subsequent act of the Legislature.

For the sake of argument, all of these contentions may be assumed to be correct, and yet the act in question, as construed in the former opinion, does not violate any of the principles contended for. In the first place, it does not require the county to sell the certificates for less than their face value, but merely gives legislative sanction to such a proceeding in case the board of county commissioners so elect to proceed. This being true, no discussion of the power of the Legislature to constitutionally so legislate, had the law in question arbitrarily directed a sale of these certificates for less than the full amount of the taxes, etc., is necessary.

But, if we should assume that the Legislature had no authority to authorize the counties to sell the certificates for less than the full amount of the taxes, etc., or to permit a redemption from such sale without the payment to the county of such amount, we fail to see how appellant would be benefited. His contention is that the owner of the property must pay to the county treasurer the full

amount of the delinquent taxes, penalties, interest, and costs, up to the time of sale, plus the interest provided by statute, which accrues after a sale, and that this money so paid to the county goes to the purchaser of the certificate and not to the county, so that in either event the county would receive only the amount for which the certificate had been sold. The reason for the provision giving the owner the right to redeem by paying to the county treasurer the amount for which the certificate is sold, plus the interest provided by statute, is readily apparent, when we consider the fact that the certificate may have been sold for many times the amount of the original taxes, penalties, interest, and costs. The minimum amount for which the certificate may be sold is fixed, whereupon such certificate is offered for sale to the highest bidder for cash. Suppose, for example, that the amount of delinquent taxes, etc., due on a parcel of real estate, was $100, and the board should fix $50 as the minimum amount for which the certificate might be sold, and at the auction several bidders should be present, and the purchaser of the certificate should pay $150 for the same. If appellant's argument be sound, the owner of the real estate could redeem the property by paying to the county treasurer, for the use and benefit of the owner of such certificate, $100, and the purchaser of the certificate would be minus $50, as there is no provision in the statutes by which he could recover the overplus so paid by him.

We are satisfied that the construction placed upon this statute in our former opinion is correct, and the motion for rehearing will therefore be denied; and it is so ordered.

ROBERTS, C.J., and PARKER, J., concur.

---

[No. 1908, September 20, 1916.]
[On Motion for Rehearing, December 15, 1916.]
### STATE v. WILLIAMS.

#### SYLLABUS BY THE COURT.

1. Unless the assignment of error in the motion for a new trial clearly specifies the legal ground of objection, the