GLEN INV. CO. v. ROMERO, County Treasurer.

(Circuit Court of Appeals, Eighth Circuit. October 14, 1918.)

No. 5032.

1. COURTS ⬯328(9)—FEDERAL COURTS—JURISDICTIONAL AMOUNT—"COSTS."
Where a purchaser from a New Mexico county of state tax certificates sued to enjoin the treasurer from issuing redemption certificates, without payment of certain costs and penalties which had accrued up to the date of purchase, such costs, etc., which exceeded the amount necessary to give the federal court jurisdiction, under Judicial Code, § 24,[1] were not "costs," as used in the provision declaring that such accessory demands cannot be counted in computing the jurisdictional amount.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Costs.]

2. CONSTITUTIONAL LAW ⬯139—TAXATION ⬯696—OBLIGATION OF CONTRACT —TAX SALES—REDEMPTION.
One purchasing from a county tax sale certificates after the amendment of 1915 (Laws 1915, c. 78) to Code N. M. 1915, § 5502, which allowed sale of certificates for sum less than total amount of the taxes, interest, etc., must trace all title through the amendment, and, as such sale was optional with county, there was no impairment of contract.

3. TAXATION ⬯709(1)—CERTIFICATE—REDEMPTION—AMOUNT.
A purchaser from a county of tax sale certificates sold under Code N. M. 1915, § 5502, as amended by Laws 1915, c. 78, for less than total amount of the taxes, interest, etc., held entitled on redemption to collect only his expenditure plus interest, instead of the sums called for by the certificate.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Bill by the Glen Investment Company against Eugenio Romero, as Treasurer and ex officio Collector of the County of San Miguel, State of New Mexico. From a decree dismissing the bill for want of jurisdiction, complainant appeals. Reversed, with directions to dismiss bill on merits.

Edwin H. Park, of Denver, Colo. (Thomas H. Gibson, of Denver, Colo., on the brief), for appellant.

Chester A. Hunker, of Las Vegas, N. M. (S. B. Davis, Jr., of East Las Vegas, N. M., on the brief), for appellee.

Before HOOK, CARLAND, and STONE, Circuit Judges.

STONE, Circuit Judge. Appellant is purchaser from the county and holder of tax sale certificates issued by the proper authorities of

---

the county of San Miguel, N. M. These certificates had been originally issued to the county at the time it bought in the land for nonpayment of taxes. Under a state statute, when the county had bought in land for two or more successive years, it might under certain circumstances here present, sell such sale certificates at public auction to the highest cash bidder for not less than the minimum sum fixed by the county commissioners. At such an auction sale appellant bought a large number of such sale certificates held by the county. The appellee is the treasurer and ex officio collector of that county. Under the statutes of New Mexico the land covered by the above sale certificates is subject to redemption by the owner. At the time of redemption the county treasurer, to whom the redemption money is paid for the use of the sale certificate holder, is required to issue to the owner a redemption certificate, which is made conclusive proof of such redemption. The appellee treasurer was threatening to issue redemption certificates against the above several sale certificates upon payment by the respective owners of the amount paid by appellant for each of such sale certificates, plus interest at the rate of 12 per centum annually since the date of purchase. Appellant contended that the amount required for such redemption was the amount of taxes originally levied upon each of the several parcels of property, together with penalties, costs, and interest as set forth in the several sale certificates. To prevent the issue of the redemption certificates as threatened, appellant sought an injunction.

[1] After answer, the jurisdiction of the court below was there successfully assailed by motion upon two grounds: First, that, although a diversity of citizenship, the controversial amount was less than $3,000; and, second, that no federal question was involved. Plaintiff claimed the right to receive, at redemption of the certificates held by him, the original amount of the taxes, costs, penalties, and interest from the date of the certificate. Defendant claimed that such recovery should be confined to the purchase price paid by plaintiff for the certificates, with interest thereon from date of purchase. The purchase price equaled the original tax. Therefore the amount in dispute was the costs (in connection with the taxation), penalties, and interest which had accrued to date of purchase. The costs here intended are not the costs of this present suit, but such as arose in connection with the tax sale proceedings. The interest is not merely that incidental or auxiliary to the amount in dispute, but is one of the main elements or items making up that amount. Such costs and interest are not within the meaning of those terms as used in the section (Judicial Code, § 24; Comp. St. 1916, § 991) which excludes such from inclusion in the jurisdictional amount. As said in Edwards v. Bates County, 163 U. S. 269, 273, 16 Sup. Ct. 967, 41 L. Ed. 155, the distinction is between "a principal and accessory demand." The matter in dispute here is not the amount of taxes, but what amount beyond the taxes (such as costs, penalties, and interest) must be paid. Admittedly this sum exceeded $3,000. The jurisdictional amount having been shown, with an undisputed diversity of citizenship, the court should have retained jurisdiction of the cause.

Strictly speaking, determination of the existence of jurisdiction as above would cover all matters really before us upon this appeal. However, the parties have expressed their desire that a decision be made upon the merits. A refusal of this request would have the sole result of sending the cause to the trial court, whence it would return here. The facts are fully agreed in the pleadings, and the differences are purely as to the law. We see no good reason to impose upon these litigants the delay and expense of again presenting to the trial court and to this court the precise legal questions upon the same agreed facts which were put before us in briefs and arguments. Nor should the time of these courts be wasted in such useless repetition. We will not consider whether there is in this case a federal question which could cast the jurisdiction of the national courts. Having assumed jurisdiction because of diversity of citizenship, we will treat the merits of the case.

The Supreme Court of New Mexico (State ex rel. Cunningham et al. v. Romero, 22 N. M. 325, 161 Pac. 1103) has decided, in a case involving some of these same certificates and others of like character, that the proper redemption amount upon such certificates is the purchase price, with interest thereon at 1 per centum monthly from date of purchase, to which should be added the amount of any subsequent taxes paid by the purchaser after purchase, with the same interest thereon from payment. Appellee claims that this decision by the highest state court is conclusive upon this court. If this be true, then that decision rules this case. Appellant, however, contends, first, that the result reached in that case would impair the obligation of the contract represented in the certificates; and, second, that this court is not bound by that decision, but should examine the matter for itself, in which event its construction of the statutes would prevail.

[2] As to the impairment of the contract: The contract intended is that contained in the certificate of sale. We waive, without decision, the suggestions that such a certificate is not a contract within the constitutional provision, and that the political and legal character of a county would prevent the application of that provision. Conceding, but not deciding, that the certificates are fully protected by the Constitution as contracts so long as they remain the property of the county, and conceding, but not deciding, that such contracts are in terms as contended by appellant, yet it does not follow that the appellant stands in the place of the county. It is true it bought the certificates from the county, and acquired such title as the county could convey. This, however, it did under the following circumstances: Up to 1915 the laws of New Mexico (section 5498) provided that the collector should make sale of land for delinquent taxes; that at such sale the land should go to the highest cash bidder whose bid equaled the full amount of taxes, penalties and interest due thereon; that in default of such bid the land should be "struck off to the county for such total amount"; that in no case should such interest be released, abated, rebated, or reduced, but should have the force of and become part of the original tax; that one-half of the interest so collected as penalty should be paid into the state interest fund and one-half credited to the county

interest fund; that the county should not by such sale acquire title to such real estate, "but shall sell and assign the duplicate tax certificate, as provided in section 5500." Section 5500 provided that the county treasurer should "sell and assign the duplicate certificate of such sale" to any one who would at any time pay the full face value thereof with accrued interest; if not so sold before time for the next regular tax sale, such certificate shall be sold at public auction to the highest cash bidder, whose bid should equal the full amount of the taxes and interest; that it would be thereafter redeemable in repayment of the amount so paid. Section 5502 was:

"Upon payment of the amount for which any real estate is sold, the treasurer shall give to the purchaser a certificate of sale containing a description of the property sold, stating the name of the person or persons to whom the same was assessed or that it was assessed to unknown owners, as the case may be, the amount paid therefor, and that it was sold for taxes, with the date of sale, and that the sale is subject to the right of the owner to redeem the property within three years by paying the amount paid at such sale with interest thereon at the rate of one per cent. per month, which certificate must be recorded in the office of the county clerk in a book kept for the purpose of recording such certificates. Such former owner may at any time, within three years from the date of recording such certificate, or duplicate certificate, provided for in section 5500, redeem the property by paying to the county treasurer for the use of the purchaser, or his assigns, the amount of purchase money with interest, as aforesaid, together with any taxes which may have been paid upon the property by the purchaser or his assigns, with interest at the same rate, and such former owner may retain possession of the property until the time of redemption has expired.

"Real estate sold for taxes, whether struck off to the county or sold to others, shall continue to be assessed in the name of the original owner, or to unknown owners, as the case may be, until the title shall pass by tax deed or otherwise, and taxes thereon for the time during which said certificate or duplicate shall be held by the county or a purchaser shall be a lien upon said property until paid."

It is evident from the foregoing that, if the land was redeemed, the purchaser at a tax sale or of a duplicate certificate from the county was entitled to receive the amount he had invested in the purchase or expended in later taxes against the land, with interest thereon at 1 per centum monthly from date of such payment. There could be no uncertainty as to the amount required for redemption.

As the county could not sell the land at the tax sales, nor the certificates purchased by it, for less than the total amount due, there were instances where the county could realize no cash return as to such taxes. The county was denied the right, which belonged to the ordinary purchaser, of becoming the owner of land covered by its sale certificates. Thus it was helpless when no one could be found who would pay the minimum purchase price. We may infer that this contingency was realized to a serious extent, as the Legislature in 1915 added to section 5502, with a view of relieving counties which had on hand such immovable certificates, the following amendment:

"Whenever any lot, parcel or tract of land, or any interest therein, or any improvement thereon, shall have been bid in prior to April 1, 1915, by or for any county at tax sales made pursuant to law for two or more years, and the treasurer of such county has been unable to sell the certificates or duplicate certificates therefor so as to realize the total amount of the taxes, interest, penalty and costs due upon such property, said treasurer may sell

the same at public auction to the highest bidder for cash, who shall bid not less than the minimum sum therefor which the county commissioners of said county, by order duly entered upon their records at any regular meeting, may have decided to accept. And at any time prior to the date fixed for such sale in the notice given by the treasurer the owner of such property may redeem the same from such tax sales by paying to the treasurer the minimum amount so fixed by the county commissioners, such sale of said certificates or duplicate certificates, or such redemption by the owner, shall release said property from the lien of all delinquent taxes, penalties, interest and costs standing against the same at the date of such sale or redemption." Laws 1915, c. 78.

The certificates here involved come within the description of the amendment. They were held by the county at the time the amendment became effective and were subsequently sold thereunder to appellant.

The amendment of 1915 was not intended to and did not change the existing law as to tax sales and redemptions with their incidents and requirements. It was designed to meet a temporary, particular and special situation. It dealt only with a definite and determined lot of then existing sale certificates. Its effect was to permit counties to deal with those certificates in a way theretofore forbidden; that is, to sell them at a price below the amount called for by the certificate. Before this change the two provisions of the statute, that the interest on the taxes should not be abated and that the redemption should be for the purchase price plus interest thereon, could not conflict, because the purchase price must equal the total amount of taxes, penalties, costs, and interest. Under the amendment, when the certificates sold below that figure, this divergence would occur. The Legislature could grant the counties a new right affecting the certificates upon any conditions it deemed proper. So long as the county was left free to exercise its choice of maintaining the existing status or of changing it under the conditions prescribed, no question of abrogation or change of its contract rights could arise. The amendment put no compulsion upon the counties. It left them free to sell or not to sell under it. Therefore it might contain any conditions or terms the Legislature desired qualifying an exercise of the privilege thus extended. The Legislature might make it a condition that the purchaser should receive only his expenditure, plus interest thereon at 1 per centum monthly. If the county seeks to sell and appellant to purchase through the authority of this amendment, each must accept the full terms thereof. Appellant must trace its entire title and rights through that amendment. It must therefore accept the certificates with such conditions or alterations, if any, as the amendment prescribes. Hence we conclude that no contract obligation can be invaded unlawfully by any condition the amendment may impose upon the exercise of this new privilege given the counties.

[3] The remaining question is: Was it one of these conditions that the purchaser should collect only his expenditure, plus interest at 1 per centum monthly, instead of the sums called for by the face of the certificate? The state Supreme Court in the above case has said that such a condition exists. That case has been carefully examined. Irrespective of the question as to whether we are bound by that decision, we approve the reasoning and conclusion thereof.

The case is reversed, with directions to set aside the order sustaining the motion of appellee to dismiss the bill for want of jurisdiction, to deny such motion, and to dismiss the bill upon the merits, at the costs of appellant.